# EXHIBIT 2

**Non-Competition, Non-Solicitation and Confidentiality Agreement**

Section 1.     In General.  This Non-Competition, Non-Solicitation and Confidentiality Agreement (the "Agreement") is entered into by and between John Dennis Sanacore ("Employee") and Miner, Ltd., and its respective successors and assigns, (the "Company"), as of January 1, 2021.

Section 2.     At-Will Employment.  Employee and the Company acknowledge that this Agreement is a valid and binding contract and that employee has executed this Agreement in consideration for initial and continuing employment by the Company.  Employee and Company further acknowledge that Employee's employment is at-will and nothing in this Agreement alters or in any way changes Employee's at-will relationship with the Company. Employee further acknowledges that Employee's relationship with the Company can be terminated by the Company with or without cause at any time, with or without notice.

Section 3.     Restrictive Covenants.

(a)     Non-Compete.  Employee acknowledges that by virtue of his or her position with the Company, he or she has developed considerable expertise in the business of the Company and has obtained access to confidential and proprietary information of the Company, and that the access to that confidential and proprietary information is a part of the consideration for entering this Agreement.  During Employee's employment with the Company and for a period of two (2) years following the date of Employee's termination of employment for any reason (the "Non-Competition Period"), Employee shall not, without the prior written consent of the Company, and whether as employee, principal, agent, shareholder, partner, consultant, advisor, limited liability company manager or member, director, or otherwise, directly or indirectly, participate in any manner with a Competing Business anywhere in the geographic location in which the Employee provides services to the Company: (i) where doing so will require Employee to provide the same or substantially similar services to a Competing Business as those that Employee provided to the Company, or (ii) where Employee's competitive employment would risk the disclosure or use of confidential information of the Company, nor will Employee engage in any other activities that conflict with his or her obligations to the Company. Employee's making or guarantying of a loan, lease or any other financial arrangement to, with or for any person or entity that engages in any of the activities described in the preceding sentence shall be deemed a breach of the covenant set forth in the preceding sentence. However, Employee may purchase or own up to 1% of the outstanding stock of any publicly traded corporation that competes with the Company or any of its affiliates, but may not be employed by or otherwise participate in the activities of such corporation.  For purposes of this Agreement, "Affiliate" shall mean, with respect to any individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority or other entity of whatever nature ("Person"), any other Person directly or indirectly controlling, controlled by, or under common control with, such Person where "control" shall have the meaning given such term under Rule 405 of the Securities Act of 1933, as amended.

For purposes of this Agreement, the term "Competing Business" means any individual (including Employee), corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, that is directly engaged in whole or in relevant part in any business or enterprise that is the same as, or substantially the same as, the business of the Company, or that is taking material steps to engage in such business.

(b)     Non-Solicitation of Employees.  During the Non-Competition Period, Employee will not, directly or indirectly, recruit, provide services to, engage the services of, or otherwise solicit or induce any person with which employee met, knows, was acquainted with, introduced to, or otherwise had knowledge of that person's employment status based upon Employee's employment with the Company, and, who is or who has been, within two (2) years prior to that time, an employee, contractor, subcontractor, independent consultant, sales representative or supplier of the Company or any of its affiliates that owns, directly or indirectly, any of the assets of the Company, to terminate or otherwise change its employment or arrangement with the Company or any of its affiliates that owns, directly or indirectly, any of the assets of the Company.  Employee further agrees that he or she shall not establish any relationship with any of the aforementioned persons or entities for the purpose of competing

with or otherwise interfering with the business of the Company or any of its affiliates, and further agrees that without the Company's prior written consent Employee shall not hire or engage the services of: (a) any employee of the Company or any of its affiliates that owns, directly or indirectly, any of the assets of the Company or (b) any person who has been, within two years prior to that time, an employee of the Company or any of its affiliates that owns, directly or indirectly, any of the assets of the Company.

(c)  Non-Solicitation of Customers.  During the Non-Competition Period, Employee will not, directly or indirectly, for the benefit or himself or herself, provide services to or otherwise solicit or contact for the purpose of diverting or obtaining sales of goods or services being offered or provided by the Company from any customer of the Company or any of its affiliates that owns, directly or indirectly, any of the assets of the Company, for which Employee had responsibility or confidential information or sold goods or services of any kind, in the course of Employee's employment with the Company.  During the Non-Competition Period, Employee will not, directly or indirectly, for the benefit or himself or herself, provide services to or otherwise solicit or induce business from any prospective customer of the Company or any of its affiliates that owns, directly or indirectly, any of the assets of the Company, for which Employee contacted on behalf of the Company to solicit business or about whom the Employee gained confidential information through the course of his or her employment with the Company or interfere with any business relationship of Company.

(d)  Tolling.  The Non-Competition Period shall be tolled during (and shall be deemed automatically extended by) any period in which Employee is in violation of the provisions of this Section 3(a)-(c).

(e)  Interpretation.  The Employee and the Company acknowledge and agree that the time, scope, geographic area and other provisions of the covenants set forth herein have been specifically negotiated by sophisticated parties and that such provisions are reasonable under the circumstances.  The parties further agree that if, despite the foregoing acknowledgement, a court or other tribunal of competent jurisdiction holds that any of the restrictions of the covenants set forth herein are unenforceable, the maximum restrictions of time, scope or geographic area reasonable under the circumstances, as determined by such court or tribunal, shall be substituted for any such restrictions held unenforceable.  The provisions of this Agreement shall survive the termination of Employee's employment with the Company.

Section 4.  Confidentiality.  Employee shall, in perpetuity, maintain in confidence and shall not directly, indirectly or otherwise, use, disseminate, disclose or publish, or use for his or her benefit or the benefit of any person, firm, corporation or other entity any confidential or proprietary information or trade secrets of or relating to the Company, including, without limitation, information with respect to the Company's operations,  processes, products, inventions, business practices, finances, principals, vendors, suppliers, customers, potential customers, marketing methods, costs, prices, contractual relationships, regulatory status, compensation paid to employees or other terms of employment, or deliver to any person, firm, corporation or other entity any document, record, notebook, computer program or similar repository of or containing any such confidential or proprietary information or trade secrets, and any other information of the Company that derives economic value from not being generally known to the public at large. Employee shall not be considered to violate this confidentiality covenant as a result of information required to be provided to current or potential customers, suppliers or other third parties strictly in the ordinary course of business. The parties hereby stipulate and agree that as between them the foregoing matters are material and confidential proprietary information and trade secrets and affect the successful conduct of the businesses of the Company (and any successor or assignee of the Company).

Section 5.  Company Property.  At no time shall employee remove, cause to be removed from the premises of the Company without express permission, or destroy, any memorandum, note, list, record, file, disk, document, or other paper, electronic data, intellectual property or trade secret, contract, proposal, equipment, customer list, pricing information, Company computer, cellular phone, PDA or other electronic device, or any other like item relating to the business of the Company, including but not limited to materials made or prepared by Employee ("Company Property"), except in furtherance of the performance of Employee's duties on behalf of the Company.  All Company Property made available to Employee or in Employee's possession shall be promptly returned to the Company immediately upon the termination of Employee's employment with the Company or at any other time upon

request of the Company.

Section 6.    Employee Inventions.  Because Company has and will continue to supply Employee with certain tools, access and opportunities, Company desires to obtain exclusive ownership of each Employee Invention (as defined herein), and Company will be at a substantial competitive disadvantage if it fails to acquire exclusive ownership of each Employee Invention.  Each Employee Invention shall belong exclusively to Company.  Employee acknowledges that all of Employee's writing, works of authorship, specially commissioned works and Employee Inventions are works made for hire and the property of Company, including any copyrights, patents and other intellectual property rights pertaining thereto.  If it is determined that any such works are not works made for hire, Employee hereby assigns to Company all of Employee's rights, title and interest, including all rights of copyright, patent, and other intellectual property rights, to or in such Employee Inventions.  Employee covenants that he will promptly: (i) at  Company's request, disclose to Company in writing any Employee Invention, in such detail as Company may in its discretion require; (ii) assign to Company or to a Person designated by Company, at Company's request and without additional compensation, all of Employee's rights to Employee Invention for the United States and all foreign jurisdictions; (iii) execute and deliver to Company such applications, assignment and other documents as Company may request in order to apply for and obtain patents or other registrations with respect to any Employee Invention in the United States and any foreign jurisdictions; (iv) sign all other papers necessary to carry out the above obligations; and (v) give testimony and render any other assistance in support of Company's rights to any Employee Invention, with Company to reimburse Employee for the out-of-pocket costs and, if after the termination of Employee's employment, provide reasonable compensation to Employee for such effort.  Notwithstanding anything to the contrary contained herein, Company acknowledges that no provision in this Agreement is intended to require assignment of any of Employee's rights in an invention if no equipment, supplies, facilities, or trade secret information of Company was used, and the invention was developed entirely on Employee's own time, unless the invention relates to the business of the Company, whether actual or proposed.

For purposes of this Agreement, the term "Employee Invention" means any idea, invention, technique, modification, process or improvement (whether patentable or not), any industrial design (whether registerable or not), and any work of authorship (whether or not copyright protection may be obtained for it) created, conceived or developed by Employee, either individually or in conjunction with others, during Employee's employment by the Company (whether prior to or during the term of this Agreement) while using company resources, Proprietary Items or Confidential Information, or that relates in any way to, or is useful in any manner in, the business then being conducted or proposed to be conducted by the Company, and any such item created by Employee, either individually or in conjunction with others, following the termination of this Agreement, that is based upon or uses Confidential Information (whether acquired by Employee prior to or after the Effective Date during the course of his employment by the Company).

Furthermore, nothing in this Agreement shall be construed to convey to Employee any right, title or interest in, under or with respect to any patents, patent applications, trademarks, copyrights or other similar rights of the Company, any confidential information, or any license to use, sell, exploit, copy or further develop in any way confidential information received from the Company. No license is hereby granted or implied to the Employee under any patent, copyright or trademark, any application for any of the foregoing, or any trade name or trade secrets, in which the Company has any right, title or interest.

Section 7.    Non-Disparagement.  The Employee agrees not to make any negative, defamatory, or otherwise disparaging statements, whether oral or written, regarding or relating to the Company or any of its affiliates, any of their respective products or practices, or any of their respective directors, officers, agents, representatives, shareholders, members or affiliates, either orally or in writing.

Section 8.    Injunctive Relief.  It is recognized and acknowledged by the Employee that a breach of any of the covenants contained in this Agreement will cause irreparable damage to the Company and its goodwill, the exact amount of which will be difficult or impossible to ascertain, and that the remedies at law for any such breach will be inadequate.  Accordingly, the Employee agrees that in the event of a breach of any of the covenants contained in this Agreement, in addition to any other remedy which may be available at law or in equity, the Company will be entitled to specific performance and injunctive relief.

Section 9.　　　Attorneys' Fees and Costs.　In addition to any other relief available pursuant to applicable law, Employee and Company hereby agree that the prevailing party in any litigation related to a breach of this Agreement shall be entitled to its reasonable attorneys' fees and costs incurred in prosecuting such an action.

Section 10.　　　Immunity for Reporting a Suspected Violation of Law.　Employee understands that Employee will not be held criminally liable under any Federal or State trade secret law for disclosure of a trade secret if: (a) that disclosure is made in confidence to a Federal, State, or local government official, either indirectly or directly, or to an attorney for the sole purpose of reporting or investigating a suspected violation of law; or (b) the disclosure is made in a complaint or other document in a lawsuit or other proceeding, and then, only if the complaint or other document filed is made under seal.　In the event that Employee files a lawsuit for the Company's alleged retaliation for Employee's reporting a suspected violation of law, provided that (a) the complaint and other documents filed in the lawsuit that mention or are in any way related to the Company's trade secrets are under seal, and (b) Employee does not disclose such trade secrets except as ordered by the Court, Employee may disclose the trade secret to his or her attorney only, and Employee may use the trade secrets in the court proceeding, but only to the extent allowed by law and pursuant to the Orders of the Court.

Section 11.　　　Severability.　Each provision of this Agreement should be effective and valid under the law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other Agreement provision.　This Agreement shall be reformed, construed and enforced as if such invalid, illegal or unenforceable provision had never been contained herein, except to the extent that if a court finds overbroad any provision, it may reform the provision to reasonably protect the Company's interests.

Section 12.　　　Complete Agreement.　This Agreement is the complete and final agreement between the parties with respect to the topics it covers.　It supersedes all prior agreements and discussions on the subjects covered herein.

Section 13.　　　Successors and Assigns.　This Agreement shall bind and inure to the benefit of and be enforceable by Employee, the Company and their respective heirs, executors, personal representatives, successors and assigns, except that Employee may not assign any of his rights or delegate any of his obligations hereunder without the prior written consent of the Company.

Section 14.　　　Construction and Non-Waiver.　The parties understand that the Company will make business decisions on a case-by-case basis to determine whether and to what extent to initiate legal action to enforce the competition and solicitation restrictions in its agreements.　The Company's decisions about legal enforcement in other cases will be immaterial in any enforcement action under this Agreement.　They will have no bearing on enforcement as to this Agreement, and they will not operate as a waiver of any rights in this Agreement.　This Agreement shall be construed neither for, nor against, Employer as the drafter of the Agreement.

Section 15.　　　Choice of Law and Venue.　This Agreement shall be governed by the internal law, and not the laws of conflicts, of the State of Florida.　Employee and the Company hereby agree that the adjudication of any disputes pursuant to this Agreement shall be venued in the state or federal courts located in the County where Employee first executes this Agreement, and Company and Employee hereby agree to jurisdiction and venue of those Courts and waive any objection to personal jurisdiction.

[signature page follows]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.  This Agreement may be executed in several counterparts.

Miner, Ltd.

Name:  Kirk E. Yosick
Title:  General Counsel


EMPLOYEE

DocuSigned by:

John Dennis Sanacore
VP of Service Sales & Strategic Accounts